**The below described is SIGNED.**

**Dated: July 16, 2009**

_____
**R. KIMBALL MOSIER**
**U.S. Bankruptcy Judge**



## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF UTAH

| In re: **BRIAN WILLIAM HUGHES and SHANNA DEE HUGHES,**  Debtors. | Bankruptcy Number: 08-24736  Chapter 13  Judge R. Kimball Mosier |
|---|---|
| In re: **ERROL DENNIS ULLOA and JIMENA CLAUDIA ULLOA,**  Debtors. | Bankruptcy Number: 08-29072  Chapter 13  Judge R. Kimball Mosier |

### MEMORANDUM DECISION

Brian William Hughes and Shanna Dee Hughes ("Hughes") and Errol Dennis Ulloa and Jimena Claudia Ulloa ("Ulloas") (collectively "Debtors") have filed motions to modify their confirmed chapter 13 plans. The central issue related to the motions to modify the Debtors' chapter 13 plans is the treatment of the Debtors' 2008 federal and state tax refunds. Pursuant to the order confirming their chapter 13 plans, the Debtors are required to pay into their plans the total amount of their 2008 tax refunds that exceed $1,000.00. The Debtors are requesting that

this Court enter an order modifying their confirmed plans and allowing the them to retain all of their 2008 federal and state tax refunds.

## FACTUAL BACKGROUND

### I. The Hughes' Case.

The Hughes filed their petition for relief under chapter 13 of the United States Bankruptcy Code on July 23, 2008. An order confirming the Hughes' chapter 13 Plan ("Hughes Confirmation Order") was entered on November 24, 2008. The Hughes Confirmation Order provided that the Hughes make the payments described in their plan until no less than $500.00 is disbursed *pro rata* on allowed nonpriority unsecured claims pursuant to 11 U.S.C. § 1325(b)(1)(B)[1] but not to exceed 100% of the total allowed amount of such claims. The Hughes Confirmation Order further provided that the Hughes would make one plan payment of $490.00 and then make monthly payments in the amount of $495.00 for not less than 35 months but not longer than 60 months. The estimated length of the plan as confirmed is 60 months.

The Hughes Confirmation Order also provided that the Hughes shall pay into the plan the total amount of yearly state and federal tax refunds that exceed $1,000.00 that the Hughes are entitled to receive during the three-year period starting with the first scheduled meeting of creditors. The tax refunds to be paid into the plan may reduce the overall plan term if it is greater than 36 months, but in no event shall the amount paid into the plan be less than 36 payments plus all tax refunds in excess of $1,000.00 during the 3-year period.

---

[1]Statutory references herein are to Title 11 of the United States Code.

On May 14, 2009, the Hughes filed their Motion to Abate, Modify Confirmed Chapter 13 Plan and for Allowance of Fees and Costs to Attorney for Debtor ("Hughes' Motion to Modify"). The Hughes' Motion to Modify reflects that the Hughes' 2008 federal and state tax refunds total $6,008.00. Under the terms of their confirmed plan, the Hughes are required to pay into their plan the amount of $5,008.00 from these tax refunds. The Hughes assert that they experienced a reduction of income in October, November, and December of 2008 and have outstanding expenses that must be paid. The Hughes seek to retain the full amount of the 2008 tax refunds to pay the following expenses:

1. Postpetition mortgage arrearage in the amount of $2,146.26.

2. Necessary car repairs in the amount of $1,622.93.

3. School supplies for home schooling in the amount of $570.00.

4. Orthodontist bill in the amount of $876.87.

5. Membership fees for professional organization in the amount of $120.00.

6. Outstanding medical bill in the amount of $101.66.

7. Purchase of used laptop in the amount of $570.28.

The Hughes' request as set forth in their Motion to Modify seeks "an Order abating[2] the 2008 tax refund in full, modifying their plan to return $3,574.00 to unsecured creditors, modifying the plan payment to $580.00... ." The Hughes' Motion to Modify proposes that they

---

[2]In this District, use of the term "abate", although a regular practice, is inconsistent. The common definition of abate is to lessen, diminish, or terminate. This is the definition apparently used by the Hughes in their motion to modify. The Hughes' Motion to Modify seeks to lessen the amount of a payment they are required to pay into their plan. However, in this District, "abate" also appears to be a term of art. "An 'abatement' is a method for treating delinquencies in plan payments which has evolved through local practice. *In re Zeigler*, 91-1014S. 1992 WL 5006 (Bankr. E.D. Pa. 1992). The effect of an abatement is to extend the length of a plan, and pay any abated delinquencies prior to discharge. Motions seeking an abatement are essentially seeking a plan modification and should be treated accordingly, *In re Taras*, 136 B.R. 941 (Bankr.E.D. Pa. 1992)." *In re Tolioni*, 359 B.R. 814, 816 n.4 (Bankr. D. Utah 2007).

not be required to pay into the plan the $5,008.00 due from the 2008 tax refunds and that they be allowed to retain the entire amount of their 2008 federal and state tax refunds. The Hughes' request for an order modifying their plan to return $3,574.00 to unsecured creditors would be a modification to the plan to provide that the Hughes will make the payments described in the plan until no less than $3,574.00 is disbursed *pro rata* on allowed nonpriority unsecured claims. The Hughes' Motion to Modify is silent as to any potential impact the modification may have on the plan length.

At the hearing on the Hughes' Motion to Modify, the Hughes conceded that if their plan is modified as requested, in order for it to be feasible, the term of the plan will be 60 months. Also at the hearing the Hughes orally amended their motion to modify to provide that their monthly plan payments increase to $610.00 and that plan payments will continue until no less than $5,008.00 is disbursed *pro rata* on allowed nonpriority unsecured claims.

**II.  The Ulloas' Case.**

The Ulloas filed their petition for relief under chapter 13 of the United States Bankruptcy Code on December 20, 2008. An order confirming the Ulloas' chapter 13 Plan ("Ulloa Confirmation Order") was entered on May 12, 2009. The Ulloa Confirmation Order provided that the Ulloas make the payments described in their plan until no less than $500.00 is disbursed *pro rata* on allowed nonpriority unsecured claims. The Ulloa Confirmation Order further provided that the Ulloas would make one plan payment of $415.00 and then make monthly payments in the amount of $150.00 for not less than 35 months but not longer than 60 months. The estimated length of the plan as confirmed is 60 months.

The Ulloa Confirmation Order also provided that the Ulloas shall pay into the plan the total amount of yearly state and federal tax refunds that exceed $1,000.00 that the Ulloas are entitled to receive during the three-year period starting with the first scheduled meeting of creditors. The tax refunds to be paid into the plan may reduce the overall plan term if it is greater than 36 months, but in no event shall the amount paid into the plan be less than 36 payments plus all tax refunds in excess of $1,000.00 during the 3-year period.

On July 1, 2009, the Ulloas filed their Motion to Modify a Confirmed Plan and Amended Motion to Approve Use of Assets (Tax Refunds) ("Ulloas' Motion to Modify"). The Ulloas' Motion to Modify reflects that the Ulloas' 2008 federal and state tax refunds total $6,753.00. Under the terms of their confirmed plan, the Ulloas are required to pay into the plan the amount of $5,753.00 from these tax refunds. The Ulloas seek to retain the full amount of the 2008 tax refunds to pay the following expenses:

1. Purchase of a second vehicle in the amount of $4,500.00.

2. Payment of four citizenship fees in the total amount of $2,700.00.

The Ulloas' Motion to Modify is silent as to any potential impact the modification may have on the plan length or on return to the unsecured creditors.

## DISCUSSION

**I. Relation of the Debtors' Tax Refunds to Their Chapter 13 Plans.**

In these cases, the Debtors' confirmed plans included a provision that the total amount of yearly state and federal tax refunds that exceed $1,000.00 that the Debtors are entitled to receive during the three-year period starting with the first scheduled meeting of creditors will be paid

into their plans. Including the Debtors' tax refunds as payments under their chapter 13 plans resolved issues under §§ 1325(a)(4) and 1325(b)(1)(B), which issues would otherwise need to be addressed in their chapter 13 plans.

### A. Section 1325(a)(4).

Section 1325(a)(4) provides that property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7. Section 1325(a)(4), commonly referred to as a liquidation analysis or the "best interest of creditors test", requires two separate calculations.

> First, the court must consider the value, as of the effective date of the proposed Chapter 13 plan, of the property to be distributed to each unsecured creditor in Chapter 13, taking into account the Chapter 13 administrative expenses. Next, the court must consider the amount that would be paid on each allowed unsecured claim if the debtor's estate were liquidated in a hypothetical Chapter 7 case, taking into account the Chapter 7 administrative expenses.[3]

The chapter 13 plan meets the best interest of creditors test if the proposed distribution in the chapter 13 plan is not less than the distribution calculated for the hypothetical chapter 7 case.

It is well established in this Circuit that a debtor's tax refunds attributable to the prepetition portion of the taxable year are property of the bankruptcy estate.[4] Even tax refunds resulting from earned income credits are property of the bankruptcy estate.[5] Consequently, the prepetition portion of a debtor's tax refund would be paid to creditors in a hypothetical chapter 7 case. It would be a cumbersome process if courts were required to perform a liquidation analysis

---

[3] *In re Dewey*, 223 B.R. 559 (10th Cir. BAP 1998)

[4] *In re Barowsky*, 946 F.2d 1516 (10th Cir. 1991).

[5] *In re Trudeau,* 237 B.R. 803 (10th Cir. BAP 1999).

with respect to a debtor's prepetition tax refunds in every chapter 13 case to ensure compliance with § 1325(a)(4). A debtor's agreement to pay tax refunds into the chapter 13 plan obviates the need for this analysis.

By agreeing to pay their tax refunds into the chapter 13 plan, these Debtors avoided the need to estimate the prepetition portion of their tax refunds and pay that amount into their plans through increased regular plan payments. The Debtors' agreement to pay the prepetition portion of their tax refunds into the plan satisfied the § 1325(a)(4) requirement, at least with respect to tax refunds.

### B. Section 1325(b)(1)(B).

If a creditor or trustee objects to plan confirmation, § 1325(b)(1)(B) provides that all of the debtor's projected disposable income to be received in the applicable commitment period be applied to make payments to unsecured creditors under the plan. As part of the calculation of a debtor's projected disposable income, tax expenses actually incurred should be deducted from the debtor's monthly income.

As a result of the amendments to the Bankruptcy Code adopted by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), in above-median income debtor cases the calculation of tax expenses actually incurred is taken into account in Official Form 22C.[6] If above-median income debtors deduct only their "actually incurred future tax expenses,"

---

[6]Current Monthly Income is defined in § 101(10A). If a debtor's Current Monthly Income exceeds the applicable median family income, the debtor's disposable income is determined in accordance with § 707(b)(2)(A),(B) using Official Form 22C, which permits above-median income debtors to deduct actually incurred future tax expenses. *In re Lawson*, 361 B.R. 215, 224 (Bankr. D. Utah 2007). Below-median debtors do not use Official Form 22C to calculate disposable income.

postpetition tax refunds would typically be excluded from projected disposable income, unless the debtors voluntarily agree to submit future tax refunds to the chapter 13 plan.[7]

Because the Hughes and Ulloa cases are below-median income cases, the Debtors' projected disposable income is calculated using Schedules I and J of Official Form 6. Pursuant to *In Re Midkiff*,[8] postpetition tax refunds are "projected disposable income" and the postpetition portion of the Debtors' tax refunds must be paid into their plans.

## II. Debtors' Right to Modify Their Confirmed Plan.

Pursuant to § 1329, anytime after confirmation of a chapter 13 plan but before completion of payments under the plan, a plan may be modified. Any modification of a chapter 13 plan under § 1329 must meet the requirements of § 1325(a). There is no express threshold requirement that debtors must meet in order to seek modification of a confirmed plan. Some courts have held that in order to seek modification of their plan, debtors must prove that they have experienced a substantial or material and unanticipated change in their post-confirmation financial condition.[9] Other courts have held that there is no threshold requirement under § 1329(a) that debtors demonstrate a significant and unanticipated change in circumstances.[10]

---

[7]*In re Lawson*, 361 B.R. 215 (Bankr. D. Utah 2003).

[8]*In re Midkiff*, 342 F.3d 1194 (10th Cir. 2003), *affirming* 271 B.R. 383 (10th Cir. BAP 2002).

[9]*In re Murphy*, 474 F.3d 143 (4th Cir. 2007); *In re Arnold*, 869 F.2d 240 (4th Cir. 1989); *In re Mellors*, 372 B.R. 763 (Bankr. W.D. Pa. 2007); *In re Gallagher*, 332 B.R. 277 (Bankr. E.D. Pa. 2005); *In re Dunlap*, 215 B.R. 867 (Bankr. E.D. Ark. 1997).

[10]*In re Barbosa*, 235 F.3d 31 (1st Cir. 2000); *Matter of Witkowski*, 16 F.3d 739 (7th Cir. 1994); *In re Brown*, 219 B.R. 191 (6th Cir. BAP 1998; *In re Than*, 215 B.R. 430 (9th Cir. BAP 1997); *In re Powers*, 202 B.R. 618 (9th Cir. BAP 1996); *In re Studer*, 237 B.R. 189 (Bankr. M.D. Fla. 1998);

Although there is a significant amount of case law on this issue, as a practical matter courts appear to reach similar results. Even for courts that have held that § 1329(a) allows parties an absolute right to request a modification, this right of modification under § 1329 is not without limits.[11] Chapter 13 debtors cannot simply modify their plans willy-nilly.[12] Parties requesting modifications of chapter 13 plans must advance a legitimate reason for doing so.[13]

This Court believes the better reasoned approach is that § 1329(a) allows parties an absolute right to request a modification, but such request will not necessarily be granted. The requesting party must establish a legitimate reason for the modification in order for this Court to grant relief. The Debtors' motions to modify their confirmed chapter 13 plans are therefore properly before this Court, but the Debtors must demonstrate a legitimate reason for this Court to allow modification of their confirmed plans and the modifications must conform to the requirements of § 1329(b).

### III.  Statutory Requirements.

Modifications to a chapter 13 plan after confirmation are governed by § 1329. Section 1329(b) provides as follows:

> (b)(1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.

---

[11] *In re Witkowski*, 16 F.3d at 745.

[12] *In re Meeks*, 237 B.R. 856, 859-60 (Bankr. M.D. Fla. 1999)

[13] *In re Trumbs*, 245 B.R. 764, 767 (Bankr. D. Mass. 2000)

> (2) The plan as modified becomes the plan unless, after notice
> and a hearing, such modification is disapproved.

This Court finds that the Debtors' motions to modify their plans comply with the requirements under §§1322(a), 1322(b), and 1323(c).

The Debtors' motions to modify their plans must meet the requirements of § 1325(a). Because the Debtors' motions to modify their chapter 13 plans propose to retain assets that would otherwise be paid to unsecured creditors, this Court must determine whether the modified plans satisfy the best interest of creditors test under §1325(a)(4).

### ANALYSIS OF PROPOSED MODIFICATIONS

**I.    The Hughes' Modification to Their Plan.**

A significant and unanticipated change in income may constitute a legitimate reason to modify a confirmed chapter 13 plan. Although the Hughes assert they experienced a reduction in income for several months they also acknowledged that they experienced increases in income in other months and that there has been little impact on their average income. Therefore, the Court finds that the have failed to establish that they have experienced a significant and unanticipated reduction in income that permits modification of their confirmed plan.

Significant and unanticipated expenses may also constitute a legitimate reason to modify a confirmed chapter 13 plan. The Hughes are asking that they be permitted to retain and use $2,146.26 of their 2008 tax refunds to pay a postpetition arrearage on their mortgage. At the time of confirmation, the Hughes' monthly mortgage payments were clearly included in their monthly budget and are regular and anticipated expenses that the Hughes would incur. Typically

this type of expense would not be a legitimate reason to modify a confirmed plan and certainly should not reduce the return to creditors. However, the Hughes' temporary reduction in income did affect their ability to remain current on their mortgage payments. The nature of a proposed modification and the impact on creditors are factors the Court may consider in evaluating a proposed modification. In light of the fact that the Hughes are now proposing to repay the full amount of the tax refund due under their plan and the proposed modification does not decrease the amount to be paid to unsecured creditors, this Court finds that the Hughes have demonstrated a legitimate reason to seek modification of their plan to use $2,146.26 to pay the postpetition arrearage on their mortgage.

The Hughes are also requesting that they be allowed to retain and use $3,861.74 of their 2008 tax refunds to pay for car repairs in the amount of $1,622.93, school supplies for home schooling in the amount of $570.00, an orthodontist bill in the amount of $876.87, membership fees for professional organization in the amount of $120.00, an outstanding medical bill in the amount of $101.66, and the purchase of a used laptop in the amount of $570.28. This Court finds that the Hughes have legitimate reasons to seek modification of their plan with respect to these unanticipated expenses.

If this Court denies the Hughes' Motion to Modify, $5,008.00 from the 2008 tax refunds must be paid into the plan. Of this amount $3,341.00 is attributable to the prepetition portion of the tax refunds. In a hypothetical chapter 7 case, unsecured creditors would receive $3,341.00 less administrative costs. If this Court approves the Hughes' Motion to Modify and if the Hughes successfully complete their plan, a minimum of $5,008.00 will be paid to unsecured

creditors. The modified plan will satisfy the requirements of §1325(a)(4) and, if successfully completed, will not reduce the return to unsecured creditors.

**II.     The Ulloas' Modification to Their Plan.**

The Ulloas are asserting that they have significant and unanticipated expenses and therefore are requesting that they be permitted to modify their confirmed chapter 13 plan. The Ulloas ask that they be permitted to retain and use $4,500.00 of their 2008 tax refunds to purchase a vehicle and $2,700.00 to pay for four citizenship fees. This Court finds that the Ulloas have legitimate reasons to seek modification of their plan with respect to these unanticipated expenses.

If this Court denies the Ulloas' Motion to Modify, $5,753.00 from the 2008 tax refunds must be paid into the plan. Of this amount $5,580.00 is attributable to the prepetition portion of the tax refunds. In a hypothetical chapter 7 case, unsecured creditors would receive $5,580.00 less administrative costs. If this Court approves the Ulloas' Motion to Modify, unsecured creditors in their case will only receive a minimum of $500.00. The modified plan does not satisfy the requirements of §1325(a)(4).

**CONCLUSION**

This Court finds that the Hughes have demonstrated legitimate reasons to modify their confirmed chapter 13 plan. Because the Hughes' Motion to Modify, as orally modified at the hearing on this matter, satisfies the requirements§ 1329(b), the Hughes' Motion to Modify will be approved.

Although the Ulloas have demonstrated legitimate reasons to modify their confirmed plan, the proposed modifications fail to comply with § 1325(a)(4) made applicable by § 1329(b). Because the modified plan does not comply with §1325(a)(4), the Ulloas' Motion to Modify will be denied. The Ulloas may propose a modification to their plan which is consistent with this ruling.

----------------------------------------------End of Document--------------------------------------------------

ORDER SIGNED

## SERVICE LIST

Service of the foregoing **Memorandum Decision** will be effected through the Bankruptcy Noticing Center to the following parties.

Brian William Hughes
Shanna Dee Hughes
2326 Liberty Ave.
Ogden, UT 84401

Brian D. Johnson
290 25th Street
Suite 208
Ogden, UT 84401

Kevin R. Anderson, tr
405 South Main Street
Suite 600
Salt Lake City, UT 84111

Errol Dennis Ulloa
Jimena Claudia Ulloa
3375 W. 7800 S. Apt. 3222
West Jordan, UT 84088

Justin O. Burton
Russell G. Evans
6000 S. Fashion Blvd.
Murray, UT 84107